**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 96-4561

OMAR YUSUF DESANGES,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Samuel G. Wilson, Chief District Judge.
(CR-95-46)

Argued: December 1, 1997

Decided: January 27, 1998

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** J. Lloyd Snook, III, SNOOK & HAUGHEY, P.C., Char-
lottesville, Virginia, for Appellant. Anthony Paul Giorno, OFFICE
OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for
Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney,
Thomas J. Bondurant, Jr., Assistant United States Attorney, Roanoke,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Omar DesAnges, an admitted drug dealer, was convicted of first degree murder for the killing of Sanford Datcher. At sentencing, the district court made a two-level upward departure in DesAnges' sentence, pursuant to § 3C1.1 of the United States Sentencing Guidelines, on the ground that he had obstructed justice by threatening or attempting to influence certain witnesses against him. Since we find the grant of an upward departure to be justified on this ground, we find it unnecessary and inappropriate to address the district court's alternative grant of a two-level upward departure on the ground that DesAnges had committed his crime in a manner that exposed a third party to a grave risk of harm, or on the ground that DesAnges killed Datcher in order to avoid being prosecuted for his drug activities.

DesAnges began transporting crack cocaine from Washington, D.C., to Clarke County, Virginia, for resale beginning in late 1992. He continued in that activity until December 23, 1994. During the course of his drug dealing, DesAnges sold in excess of one kilogram of crack cocaine.

On December 6, 1994, Sanford Datcher was sentenced on drug charges in state court where it became public knowledge that he had been working as an informant for local authorities. DesAnges and Datcher were long-time friends, and Datcher knew about DesAnges' drug activities. DesAnges was disturbed to learn that following his arrest Datcher had informed authorities of DesAnges' criminal activities. DesAnges was also upset to learn that Datcher was having sexual relations with some underage girls who were "like sisters" to DesAnges. Additionally, DesAnges learned that Datcher had been making attempts to begin a relationship with DesAnges' fiance.

2

On December 23, 1994, DesAnges spotted Datcher's car in a rural area of Clarke County. DesAnges parked his car, donned a mask, armed himself with a Glock .40 caliber handgun, and secreted himself behind Datcher's vehicle. A short time later, Datcher and his girl-friend, Dawn Ford, entered the car with Datcher as the driver and Ford as the passenger.

Once Datcher and Ford were in the car, DesAnges approached the driver's side window and fired the gun into the passenger compartment eleven to thirteen times.[1] The first shots hit Datcher's hands as they were held up in a defensive posture. The succeeding bullets hit Datcher in the chest. Datcher then rolled on his stomach and started to crawl over Ford's lap as DesAnges continued firing into Datcher's side and back. The fatal shots entered Datcher's backside and tore through his internal organs as he lay on Ford's lap. Ford was shot once in the arm during the attack. Following the shooting, DesAnges fled the area and destroyed and disposed of the firearm. He called an associate later in Clarke County and asked, "Did I do good[?]"

DesAnges was not arrested until April 25, 1995. In the months between the murder and his arrest, DesAnges contacted three witnesses who could have implicated him in the homicide. In personal contacts with the witnesses, DesAnges made comments to the effect that "if I go down, you all go down with me." Also, DesAnges admits to having used a fictitious name to send letters to the three witnesses telling them to "keep clean" because the "beast is always lurking in the midst." The witnesses, who testified to feeling threatened by DesAnges' actions, ultimately gave false statements to the grand jury and investigators.[2]

DesAnges was charged in the United States District Court for the Western District of Virginia, in a superseding indictment dated June

---

[1] There were thirteen total bullet wounds but only eleven shell casings recovered. The firearm held 13 rounds.

[2] The three witnesses were charged with obstruction of justice and sentenced on November 1, 1996. In passing sentence, the district court made a downward departure pursuant to U.S.S.G. § 5K2.12, p.s. [Coercion and Duress], due to the witnesses' fear of DesAnges. See United States v. Summers, Crim. No. 96-37-H (W.D. Va. Nov. 1, 1996).

3

22, 1995. The charges included conspiracy to distribute cocaine; capital murder for the killing of Datcher in connection with a drug conspiracy; and the use of a firearm during the course of a conspiracy.

On March 28, 1996, DesAnges entered a guilty plea to all of the charges that he faced, in exchange for the government withdrawing its request for the death penalty. Sentencing was scheduled for July 2, 1996. In the presentence report, DesAnges' offense level was set at 44, which included a base offense level of 43; a 2-point enhancement for being the leader of a drug conspiracy; a 2-point enhancement for obstructing justice during the investigation; and a 3-point reduction for acceptance of responsibility. The presentence report recommended a sentence of life imprisonment.

On July 2, 1996, a sentencing hearing was held. The judge disallowed the recommended 2-point enhancement based on the allegation that DesAnges was the leader of a drug conspiracy, but he granted a 2-point enhancement for obstruction of justice. This resulted in a sentencing range of 365 months to life. The judge sentenced DesAnges to life imprisonment, and this appeal followed.

DesAnges argues that the district court erred in making an upward departure based on a finding of obstruction of justice under U.S.S.G. § 3C1.1. That section authorizes the trial court to grant a two-level upward departure "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense . . . ." U.S.S.G. § 3C1.1.

The district court based its upward departure on its conclusion that the letter DesAnges wrote to Keith Summers was, in context, "an effort to keep Keith Summers or to dissuade Keith Summers from providing relevant and incriminating evidence to authorities." The letter, in pertinent part, states as follows:

> I know those "Folks" are sweating you but stand strong, if you know nothing say nothing cause they have nothing . . . . They lie and act like they know but if they did, I wouldn't be here and a lot of others "who were saved" wouldn't be

4

here . . . . Stay "clean" cause the "beast" is constantly lurking in the midst so to speak.

The court also found that similar correspondences with two other potential witnesses -- Brenda Morris and Pam Morris -- had the same purpose and effect.

Pursuant to 18 U.S.C. § 3742(d) (1994), this Court will accept the district court's findings of fact unless they are clearly erroneous. The Court is also required to give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(d).

It is unnecessary to decide whether DesAnges' letter was intended as a threat or, rather, as an effort to persuade a potential witness to lie to authorities. The commentary to § 3C1.1 states that a finding of obstruction of justice may be triggered by the defendant's "threatening, intimidating, or otherwise unlawfully influencing" a potential witness, or "committing suborning, or attempting to suborn perjury . . . ." U.S.S.G. § 3C.1.1, comment. 3(a)-(b). The district judge concluded that DesAnges' statement could be reasonably interpreted as either a threat or an effort to suborn perjury, and that finding was not clearly erroneous.

Accordingly, the district court's grant of an upward departure based on DesAnges' attempt to threaten or influence potential witnesses against him is affirmed.

AFFIRMED

5